# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**LEONARD McGEE**                                    **CIVIL ACTION**

**VERSUS**                                                **NO. 06-11360**

**N. BURL CAIN, WARDEN**                        **SECTION "C"**

## ORDER AND REASONS

Before the Court is a petition for habeas corpus by Leonard McGee ("Petitioner"), filed pursuant to 28 U.S.C. § 2254. Petitioner, acting *pro se*, is seeking relief from his June 17, 2004 conviction for one count of purse snatching, under LA. REV. STAT. § 14:65.1, one count of attempted armed robbery, under LA. REV. STAT. § 14:27:64, and three counts of armed robbery, pursuant to LA. REV. STAT. § 14:64. Petitioner was sentenced to thirty (30) years in prison without benefit of parole on the armed robbery counts, as well as a ten (10) year term for purse snatching, and a ten (10) year sentence for the attempted armed robbery conviction. The trial court ordered that the three terms run consecutively. Petitioner is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. As grounds for relief, Petitioner claims: he was denied effective assistance of counsel, in violation of the Sixth Amendment, when his counsel failed to: (a) file a motion to quash the bill of information and (b) properly prepare for trial. For the reasons set forth below, this petition is **DENIED WITH PREJUDICE**.

1

<u>I. CASE HISTORY</u>

**A. Procedural History**

Petitioner was charged by bill of information on January 15, 2004 for three (3) counts of armed robbery in violation of LA. REV. STAT. § 14:64, one (1) count of purse snatching in violation of LA. REV. STAT. § 14:65.1, and one (1) count of attempted armed robbery in violation of LA. REV. STAT. § 14:27:64. State Rec. Vol. 1, Bill of Information. On April 16, 2004, the trial court denied Petitioner's motions to suppress statements and evidence. *State v. McGee*, 894 So.2d 398, 402 (La. App. 5 Cir. 2005). Subsequently, a jury trial was held in Section "O" of the Jefferson Parish court. State Rec. Vol. 1, Criminal Record. On June 17, 2004, the jury returned a guilty verdict on all counts. State Rec. Vol. 1, Jury Verdict Form, p. 198. The trial court denied Petitioner's motion for a new trial and motion for post-judgment acquittal without a hearing on June 23, 2004. *Id*. Then, on July 15, 2004, Petitioner was sentenced to thirty (30) years imprisonment at hard labor for the three (3) counts of armed robbery, ten (10) years imprisonment for the attempted armed robbery count, and ten (10) years imprisonment for the purse snatching count; the sentences were ordered to run consecutively. State Rec. Vol. 1, Trial Court Judgment, pg. 208. Additionally, the State filed and then withdrew a multiple bill. *Id.*

On direct appeal to the Louisiana Fifth Circuit Court, Petitioner alleged reversible error on the following grounds: (1) the trial court erred by denying Petitioner's motion to suppress; (2) the trial court erred by not allowing a continuance; (3) the trial court erred by ordering consecutive sentences. Fed. Rec., Appellant's Original Brief, p. 7. Additionally, Petitioner submitted, *pro se*, a supplemental brief asserting that the trial court erred by not granting the Petitioner's motion for post-verdict judgment of acquittal; and, the trial court erred by not granting Petitioner's motion for a new trial. Fed. Rec., Petitioner's Supplemental *Pro Se* Brief, p.

2

4. The Fifth Circuit Court of Appeal rejected all of Petitioner's grounds for appeal and affirmed Petitioner's conviction and sentence on January 11, 2005. *State v. McGee*, 894 So.2d 398 (La. App. 5 Cir. 2005).

First, the Fifth Circuit Court of Appeal dismissed Petitioner's claim that the trial court erred by failing to grant Petitioner's motion to suppress. The court held that the Fourth Amendment had not been violated because Petitioner consented to the search of his home. During the motion to suppress hearing, Petitioner maintained that the Consent to Search Form had been altered after he signed it; however, the trial court ruled that the Petitioner's consent was given voluntarily based on the testimony of one of the investigating officers. The appellate court noted that credibility determinations are within the sole province of the trial court and are not re-weighed on appeal. *State v. McGee*, 894 So.2d 398, 405-06 (La. App. 5 Cir. 2005). And, the record showed that Petitioner had given written consent for the search; thus, the trial court was correct in finding that Petitioner's consent was voluntarily given. *Id.* at 563.

Second, the appellate court dismissed Petitioner's claim that the trial court erred by denying a motion for a continuance. The court noted that Petitioner failed to satisfy the state's procedural requirement that motions to continue be submitted in writing at least seven (7) days prior to trial. Indeed, Petitioner's counsel only made an oral motion to continue on the first day of trial. *State v. McGee*, 894 So.2d 398, 408 (La. App. 5 Cir. 2005). Additionally, the appellate court noted: (1) Petitioner's counsel had been appointed five (5) months prior to trial, (2) the prosecution's response to discovery was satisfactory and timely; and (3) Petitioner's counsel was competent at trial. And, since Petitioner did not show specific prejudice from the trial court's denial of his motion to continue, the trial court did not abuse its discretion. *Id.* at 411.

3

Third, the appellate court found no error in the trial court's order that Petitioner serve his sentences consecutively. Both the trial and appellate courts noted that Petitioner had a long history of criminal offenses. Furthermore, Petitioner could have been sentenced from ten (10) to ninety-nine (99) years for each armed robbery count. Thus, the appellate court found that sentencing Petitioner to thirty (30) years for each count was not an abuse of discretion. *State v. McGee*, 894 So.2d 398, 412 (La. App. 5 Cir. 2005).

Finally, the appellate court dismissed Petitioner's *pro se* claims that the trial court erred by failing to grant his motion for a post-verdict judgment of acquittal, and his motion for a new trial. The appellate court found that Petitioner's claims that there was insufficient evidence on which to convict were without merit. Thus, the trial court's ruling was affirmed because there was no reversible error in denying Petitioner's motions. Then, Petitioner appealed to the Louisiana Supreme Court for relief. On May 20, 2005, the Louisiana Supreme Court denied Petitioner's claims without comment. *State v. McGee*, 902 So.2d 1050 (La. 2005).

Subsequent to Petitioner's direct appeal, he submitted, *pro se*, an application for post-conviction relief on December 5, 2005. State Rec. Vol. 1, Application for Post-Conviction Relief. Petitioner stated the following grounds for post-conviction relief: he was denied effective assistance of counsel because his attorney: (1) failed to file a motion to quash the Bill of Information based on improper joinder of the offenses against Petitioner; (2) failed to adequately prepare for trial. State Rec. Vol. 1, Application for Post-Conviction Relief, p. i.

On January 6, 2006, the trial court rejected the claims for post-conviction relief contained in Petitioner's Application for Post-Conviction Relief. State Rec. Vol. 1, Order of the Trial Court. The trial judge found that Petitioner failed to meet his burden under the *Strickland* test for ineffective assistance of counsel because Petitioner's claims for relief were merely

4

disagreements with his counsel about trial strategy; and, trial tactics are not grounds for relief under *Strickland*. *Id.* Additionally, the trial court held that Petitioner's counsel was prepared for trial and performed competently while representing Petitioner during trial because the attorney reviewed discovery material with Petitioner, thoroughly cross-examined witnesses, and made objections where pertinent. *Id.*

Petitioner then filed applications to the Louisiana Fourth Circuit Court of Appeal for supervisory writs. The appellate court denied relief on February 8, 2006. Fed. Rec., Order of the Louisiana Fifth Circuit Court of Appeal. Subsequently, Petitioner applied for Supervisory Writs of Certiorari to the Louisiana Supreme Court. Petitioner presented the same issues for review to the Supreme Court as were presented to the Court of Appeals in his Application for Post-Conviction relief. Fed. Rec. Exhibit E, Petitioner's Application for Supervisory Writ of Certiorari and Review. Petitioner's applications were denied by the Supreme Court on November 17, 2006 without opinion. *State ex rel. McGee v. State*, 942 So.2d 529 (La. 2006).

### B. Factual History

The Louisiana Court of Appeal for the Fourth Circuit summarized the facts of the case during Petitioner's direct appeal as follows:

> In count 1, defendant was charged with the armed robbery of Maria Isabel Gill.[1] Gill testified that on October 30, 2003, she lived in an apartment complex on Houma Boulevard in Metairie. She returned home from a grocery store at about 6:30 p.m. and parked her car. She saw defendant, Leonard McGee, walking between two buildings. He looked at her, and then turned away. When Gill opened the trunk of her car and began to unload her groceries, defendant started walking toward her.
>
> Gill opened the door to her vehicle and attempted to get into the driver's seat. Before she could close the door, defendant was next to her, holding a gun to her head. Gill asked defendant what he wanted, and he ordered her to give him her

---

[1] The victim's name is spelled "Gil" in the bill of information, and "Gill" in the trial transcript.

5

purse. She told him to take it. Defendant took her purse and rummaged through it. He also looked inside her insulated lunch bag, which was empty. Defendant asked Gill whether there was money in her purse. She told him everything was in the purse. Defendant tucked the purse under his arm and walked toward a large, light-colored car. Gill testified that her cellular telephone was among the items in her purse. She never recovered her purse or its contents.

On December 1, 2003, Detective Roger Gorumba of the Jefferson Parish Sheriff's Office showed Gill a photographic lineup and she positively identified defendant as the man who robbed her. She also identified defendant in court.

In count 2, defendant was charged with the armed robbery of Theresa Celino. Celino testified that she and her husband own A Cool AC Supply, a business on Barataria Boulevard in Marrero. On November 12, 2003, she was working alone in her office when defendant entered the building with a young woman. The woman asked Celino for assistance with an item of merchandise. Defendant then asked Celino some questions about ductwork. When Celino turned her back on defendant, he went to her side of the service counter and grabbed her. Pointing a gun at her, defendant walked her to a storeroom. Defendant told his female companion to bring him some duct tape. The woman complied, and she taped Celino to a chair. Defendant then strapped the chair to a desk.

Defendant warned Celino that if she moved, he would shoot her. He then took all the money out of Celino's cash box, and left the premises. Celino testified that a police detective showed her a photographic lineup on November 18, 2003. She identified defendant as the man who had robbed her. Celino also identified defendant in court. The detective showed Celino a photographic lineup consisting of women, but she was not able to positively identify defendant's accomplice.

In count 3, defendant was charged with the armed robbery of Noreen Johnson. Johnson testified that she arrived at Boomtown Casino on Peters Road in Harvey at 2:30 a.m. on November 14, 2003. She parked her car in the casino's parking lot. She was exiting the vehicle when defendant approached her and began to ask her a question. He then knocked her backwards into the vehicle. Defendant put a gun to Johnson's face and threatened to kill her if she did not give him her purse.

Johnson gave defendant her purse, and watched him as he walked across the parking lot. She saw him get into a gray car and drive away. She followed in her vehicle, hoping to gather information for police. She wrote down defendant's license plate number and returned to the casino. She notified police about the incident.

Johnson testified that her cellular telephone was inside of her purse when defendant took it. She alerted her cell phone company to the robbery, and asked to be notified if any calls were made using her phone. She learned of four calls made

from her cell phone within an hour of the robbery. Johnson called the telephone numbers that had been called from her missing phone. She reached Sylvia Joseph, who gave her information she later passed on to police.

Detective John Carroll interviewed Johnson, and showed her a photographic lineup. Johnson positively identified defendant as the man who had robbed her. She also identified him in court.

Sylvia Joseph testified that she met defendant at a Marrero nightclub called Pee Wee's Lounge at about 2:30 a.m. on November 14, 2003. She gave defendant her telephone number before leaving the club. At about 3:05 a.m., she received a call from defendant on her home telephone. He left a message on her voice mail system, saying he was calling to make sure she had gotten home safely. Joseph was shown State's Exhibit 11, a copy of Noreen Johnson's cellular telephone bill. She identified one of the telephone numbers listed on the bill as her home number. Joseph testified that she identified defendant in a photographic lineup on November 15, 2003. She also identified defendant in court as the man she met at Pee Wee's Lounge.

Defendant was charged with attempted armed robbery of Denise Wild in count 4. Wild testified that she lives on Mayo Avenue in Harahan. At about 1:30 a.m. on November 15, 2003, she was driving home from her sister-in-law's home in Metairie. On Jefferson Highway, she noticed that a car was following her. She described the car as an old model Oldsmobile, metallic blue or silver in color. The car was occupied by two men.

Wild continued driving to her house, and pulled into the driveway. She saw a car's headlights coming around the corner toward her. She dialed 9-1-1 on her cell phone to call for help. The car parked in the middle of the street, and defendant, the car's driver, approached her pulling a black hood over his head. Defendant was carrying a gun.

Wild backed her vehicle out of her driveway, and defendant got back into his car. He drove three houses down and turned around in a driveway. Wild continued to operate her car in reverse, and the car came at her head-on. The car eventually pulled alongside her vehicle, and the passenger got out and walked toward her vehicle carrying a gun. Wild continued to evade the men. She got in contact with the 9-1-1 operator, who offered her little assistance. The 9-1-1 operator finally dispatched two officers to the area where the men had accosted Wild, but she was safely home by that time.

Wild testified that a Harahan police detective showed her a photographic lineup. She identified defendant as the driver of the car that had followed her.

In count 5, defendant was charged with the purse snatching of Katsuko Cox. Cox testified that she lives on Wright Avenue in Terrytown. At 5:30 a.m. on November 5, 2003, she returned home from Boomtown Casino. She parked her car in her driveway, and walked toward the front door of her residence. A tall black man approached her from behind and began talking to her. She did not understand what he was saying, so she continued to walk to the door. The man tackled her, knocking her to the ground. He took her purse, which she was wearing on her shoulder. Cox saw the man leave in a car parked in front of her neighbor's house. Detective Dax Russo later showed Cox a photographic lineup. She was not able to make a positive identification.

Cox testified that her cell phone was among the items in her purse when it was stolen. She never recovered her telephone. She identified State's Exhibit 2 as a record of calls made from her cell phone after it was stolen. She testified that she did not make those calls.

Detective Carroll testified that he participated in defendant's arrest on November 17, 2003. Detective Carroll learned defendant's address through computer checks. He went to defendant's residence in Bridge City, and found defendant outside, leaning on a gray Oldsmobile. Detective Carroll identified the car through Noreen Johnson's description and the license plate number she gave him.

Detective Carroll advised defendant of his rights, and conducted a pat-down search of his outer clothing. The officer recovered a key ring which held the keys to defendant's car and house. Detective Carroll noted that defendant's car did not have the proper license plate on it. The plate on the car was registered to a Toyota. He later located the Toyota, and found that it had the license plate that was registered to the gray Oldsmobile.

Detective Carroll obtained defendant's written consent to search his house. Detective Carroll recovered a denim jacket and blue jean pants from defendant's bedroom.

Detective Carroll once again advised defendant of his rights at the detective bureau. Defendant said he had borrowed the Oldsmobile, and that he had been in possession of the car for some time. When the officer questioned him about telephone calls made on the victims' cell phones, defendant said he had made calls using borrowed cell phones. He did not know whose phones they were, or from whom he had borrowed them.

*State v. McGee*, 894 So.2d 398, 403-05.

II. PROCEDURAL REVIEW

### A. Custody Requirement

A petitioner must be "in custody" for a federal court to entertain a petition for habeas relief. 28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a). Physical incarceration satisfies the custody requirement. *See e.g., Maleng v. Cook*, 490 U.S. 488, 491, 109 S. Ct. 1923, 1925 (1989). Here, Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Fed. Rec., Petition for Writ of Habeas Corpus, p. 1. Thus, Petitioner is in custody for the conviction he is attacking. Accordingly, one basis of this Court's subject matter jurisdiction over Petitioner's claim for relief is satisfied.

### B. Timeliness

The State concedes that Petitioner's federal habeas corpus petition was timely filed. Fed. Rec., Response to Habeas Corpus Petition, p. 7. Nonetheless, in *Kiser v. Johnson*, the Fifth Circuit held that it is appropriate for courts to review the timeliness of habeas petitions *sua sponte*. *Kiser v. Johnson*, 163 F.3d 326, 328-29 (5th Cir. 1999). The Anti-terrorism and Effective Death Penalty Act of 1996[2] (AEDPA) requires that a habeas petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which his or her conviction or sentence becomes final.[3] Yet, AEDPA's one-year statute of

---

[2] Pub. L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

[3] 28 U.S.C.§ 2254(d) provides:
  (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
      (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
      (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

9

limitations is tolled for the period of time during which a properly filed application for

state post-conviction relief or other collateral review attacking a conviction or sentence is

pending in state court. 28 U.S.C.§ 2254(d)(2); *Fields v. Johnson*, 159 F.3d 914 (5th Cir.

1998).  Furthermore, "a properly filed application is one submitted according to the

state's procedural requirements, such as the rules governing notice and the time and place

of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v.*

*Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998) (internal quotations omitted); *Williams v.*

*Cain*, 217 F.3d 303 (5th Cir. 2000).

The Supreme Court noted that "finality attaches when this Court affirms a

conviction on the merits on direct review or denies a petition for a writ of certiorari, or

when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S.

522, 527 (2003); *see also, Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)

(reaching the same conclusion regarding "finality."). Additionally, a petitioner has ninety

days to file a writ of certiorari in the United States Supreme Court after a decision is

rendered by the state's highest court. Sᴜᴘ. Cᴛ. R. 13(1). As noted above, the Louisiana

Supreme Court denied Petitioner's application for a supervisory writ on direct appeal on

May 20, 2005. *State v. McGee*, 902 So. 2d 1050 (La. 2005). Therefore, Petitioner's

conviction became final, and AEDPA's one-year statute of limitations began to run, on

---

(C) the date on which the constitutional right asserted was initially recognized
by the Supreme Court, if the right has been newly recognized by the Supreme
Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented
could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or
other collateral review with respect to the pertinent judgment or claim is pending
shall not be counted toward any period of limitation under this subsection.

August 18, 2005, ninety days after the Louisiana Supreme Court's decision denying Petitioner's direct appeal.

In this case, AEDPA's one-year statute of limitations was tolled when Petitioner timely filed his applications for post-conviction relief on December 5, 2005. There is no contention by the state, or evidence based on independent review by this Court, that the applications were procedurally improper. Therefore, AEDPA's statute of limitations was tolled for the duration of time in which Petitioner's application was pending in the state judicial system. Here, Petitioner's post-conviction application to the Louisiana Supreme Court for relief was denied on November 17, 2006. *State ex rel. v. McGee*, 942 So. 2d 529 (La. 2006). As Petitioner filed the petition *sub judice* on December 4, 2006,[4] the petition is timely because less than 365 days has elapsed since the state conviction became final, excepting the time during which Petitioner's properly filed state application for post-conviction relief was pending.[5]

### C. Venue

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the Petitioner is incarcerated or the district from which his conviction or sentence was obtained.

---

[4] A *pro se* petitioner files his or her petitioner for prescriptive purposes on the date that it is signed. *See Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995); *see also, United States v. O'Kaine*, 971 F. Supp. 1479, 1480 (S.D. Ga. 1997) (inferring that the signature date on the movant's 28 U.S.C.§ 2255 motion to vacate was the date the movant deposited the motion with prison officials for forwarding to the court.)

[5] Here, 109 days elapsed between August 18, 2005 (the date Petitioner's conviction became "final") and December 5, 2005 (the date Petitioner filed his application for post-conviction relief tolling AEDPA's statute of limitations). AEDPA's statute of limitations began to run again on November 17, 2006, when the Louisiana Supreme Court rejected Petitioner's claim for post-conviction relief. Petitioner filed this claim for *habeas corpus* only 17 days later, on December 4, 2006. Thus, a total of 126 of the 365 days allowed under AEDPA's statute of limitations passed. Therefore, Petitioner's claim for *habeas corpus* is timely filed under AEDPA.

Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, which is in West Feliciana Parish, a parish that falls within the Middle District of Louisiana under 28 U.S.C. § 98(b). However, Petitioner was convicted and sentenced in Jefferson Parish, which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana. Therefore, venue lies for this petition under 28 U.S.C.A § 2241(d).

### D. Exhaustion

Petitioner's claims are exhausted as required by AEDPA. Indeed, the State concedes exhaustion. Fed. Rec. Response to Habeas Petition, p. 8. However, an independent review regarding the exhaustion of Petitioner's claims is warranted, to advance the principles of federal-state comity. *See Shute v. Texas*, 117 F.3d 233 (5th Cir. 1997) (permitting a district court to decline the State's offer of a waiver of the exhaustion requirement). Generally, exhaustion of adequate state remedies is a "condition precedent to the invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973). To satisfy the exhaustion requirement, the entirety of the factual allegations and legal theories presented to the federal court must have been presented in a procedurally proper manner to the highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding a habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982).  It is important to note that the issues in a habeas petition could have been presented to the highest state court on direct appeal, or in a state post-conviction proceeding; either is sufficient and both are not required. *Brown v. Allen*, 344 U.S. 443, 447 (1953); *Myers v.*

*Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).  The requirement of exhaustion is now codified by 28 U.S.C.§ 2254(b)(1), which provides, *inter alia*, that habeas relief "shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State . . . ."  The other statutory provisions providing exceptions to the exhaustion rule are inapplicable here.

Petitioner's first claim is that he was denied effective assistance of counsel, in violation of the sixth amendment. Specifically, Petitioner asserts that his attorney: (1) failed to file a motion to quash the bill of information and (2) failed to properly prepare for trial. These claims were presented with the same factual and legal articulation to the Louisiana state courts as they appear before this court. Therefore, the claims are both legally and factually exhausted.

III. Petitioner's Claims

**A. Standard of Review**

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for habeas petitions.  The statute now provides that if a state court has adjudicated a claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under 28 U.S.C.§ 2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  And, questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C.§ 254(d)(1).  The United States Supreme

Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

As to questions of fact, a state court's factual findings are presumed to be correct

and a federal court "will give deference to the state court's decision unless it was based

on an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

### B. Petitioner's Claim - Ineffective Assistance of Counsel

Petitioner claims that he was rendered ineffective assistance of counsel in

violation of his Sixth Amendment right to counsel on four separate grounds. In

*Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court

established a two-prong test for evaluating claims of ineffective assistance of counsel. A

petitioner seeking relief must demonstrate both (1) counsel's performance was deficient

*and* (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at

687.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's

conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.

14

*Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). In the Fifth Circuit, "[c]ounsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). And, an analysis of an attorney's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*, 466 U.S. at 689. "[I]t is necessary to judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Matthheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Indeed, the Fifth Circuit has adopted the *Strickland* test holding: "[d]eficient performance is prejudicial only upon a showing  that but for counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined." *Little*, 162 F. 3d at 860-61. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

It is important to note that petitioners bear the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also, Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). Moreover, if a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

Additionally, a claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969 (2003). Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1).

In this case, Petitioner's first ineffective assistance of counsel claim  is that his attorney failed to file a motion to quash the bill of information against him. Essentially, Petitioner argues that the prosecution's joinder of five (5) offenses in a single bill created prejudice. Indeed, Petitioner asserts that the factors for severance weigh in his favor. Specifically, Petitioner argues that the jury was not able to segregate the various charges and evidence.

To merit habeas relief on a claim of misjoinder of offenses, a petitioner must prove that his trial was rendered fundamentally unfair. *Alvarez v. Wainwright*, 607 F.2d 683, 685 (5th Cir.1979). The decision of whether to grant a severance of offenses is "within the sound discretion of the trial court and is required only in cases of compelling

16

prejudice." *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir.1986) (quoting *United States v. MacIntosh*, 655 F.2d 80, 84 (5th Cir. 1981)). Furthermore, the burden of proving prejudice is a heavy one and a trial judge's decision on whether or not to grant a severance will rarely be disturbed by a reviewing court. *Id.*

Here, several provisions of the Louisiana's Code of Criminal Procedure control whether the bill of information properly joined multiple offenses. First, Article 493 provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial. La.C.Cr.P. art. 493.

Additionally, Louisiana's Code of Criminal Procedure, Article. 493.2 provides:

> Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. La.C.Cr.P. art. 493.2.

Finally, Louisiana's Code of Criminal Procedure, Article. 495.1 provides for severance of joined offenses, and states:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires. La.C.Cr.P. art. 495.1.

Thus, Louisiana allows the joinder of multiple offenses when the offenses are of similar

17

character; the state also allows for severance when either the state or the defendant would be prejudiced.

The Court notes that under Louisiana state law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime." *State v. Lewis*, 557 So.2d 980, 984 (La. App. 4 Cir. 1990), *writ denied*, 578 So.2d 922 (1991). Having reviewed the record in its entirety, the Court finds that Petitioner's trial was not rendered fundamentally unfair simply because the offenses were tried together. Indeed, the offenses themselves, armed robbery, attempted armed robbery, and purse snatching, were sufficiently similar to allow them to be tried together. Furthermore, the facts of each offense were not complex, and the trial judge organized the proceeding in such a way as to minimize any possible confusion among the jurors.

Moreover, as noted by the Louisiana Fifth Circuit, four of the victims were able to identify Petitioner from photographic lineups compiled after each of the offenses were committed, and they also identified Petitioner in court. Additionally, one of the victims was able to write down Petitioner's license plate number as he fled from the scene of his criminal activity. The police were able to find Petitioner's address using the license plate number. And, after being apprehended, petitioner gave a statement in which he inculpated himself in some of the incidents by admitting that he had used some of the victims' stolen cell phones. In light of such overwhelming evidence, the joinder of offenses for trial purposes had only a negligible effect, if any, on the fairness of the proceeding as a whole. Thus, Petitioner claim that he was prejudiced by his attorney's failure to file a motion to sever the offenses lacks merit. Accordingly, this claim is

dismissed.

Petitioner's second ineffective assistance of counsel claim is that his attorney failed to properly prepare for trial. Specifically, Petitioner argues that had his counsel done even a minimum amount of investigation and preparation, he would have been able to establish an adequate defense. Essentially, Petitioner argues that although his counsel was assigned to represent him five (5) months prior to trial, his attorney was not able to effectively represent him because his counsel requested a continuance on the first day of trial. The Court notes that the trial court held a hearing to consider Petitioner's motion to continue the trial before bringing the jury into the court room. State Rec. Vol. 3, Transcript of the Hearing on the Motion to Continue, p. 282. At that hearing, Petitioner's counsel asserted that he had been appointed counsel five (5) months prior to trial, but had not taken the time to discuss the charges, or possible defenses with Petitioner. *Id.* at 280-81. Indeed, Petitioner's counsel argued that he had not given effective assistance of counsel to Petitioner. *Id.* at 282. Yet, Petitioner concedes that when the trial court denied the motion to continue, his attorney acknowledged that he was ready to proceed with the trial. Fed. Rec., Petition for Habeas Corpus, p. 25.

Petitioner points to several instances during the trial when his attorney's failure to properly prepare resulted in deficient performance. First, Petitioner argues that if his attorney had properly prepared for trial, he would not have stipulated to the photographic identifications the victims made of Petitioner because the stipulation allowed the prosecution to present its case without producing either the investigating officers, or the photographic line-ups themselves. Additionally, Petitioner alleges that his trial counsel's unfamiliarity with the case was deficient because his attorney stipulated to the contents of

19

police reports. Here, Petitioner asserts that the stipulations were prejudicial because his attorney allowed the prosecution to admit evidence into the proceedings without a challenge. Fed. Rec. Petition for Habeas Corpus, p. 29. Petitioner argument is that the stipulations were prejudicial because they eased the prosecution's burden in proving the case. *Id.*

Petitioner further supports his ineffective assistance of counsel claim by asserting that his attorney should not have stipulated to the police reports because they contained incriminating statements Petitioner made after he was arrested. *Id.* To support this claim, Petitioner maintains that his counsel improperly stipulated to the police reports at the suppression hearing on April 16, 2004 due to his lack of preparation. And, that the stipulation allowed for the admissibility of incriminating statements even though the prosecution "lacked any type of proof that the statements were made." *Id.*

Again, it is clear that even "professionally unreasonable errors on the part of counsel do not warrant setting aside a conviction if the error had no effect on the judgment." *Larsen v. Maggio*, 736 F.2d 215, 217 (5th Cir. 1984). Indeed, the defendant must demonstrate that an error actually had an adverse effect on the defense; that the trial attorney's conduct affected the proceedings' reliability. *See Id.* at 218. Additionally, if the defendant makes an insufficient showing on either the "deficient" or the "prejudice" prong of *Strickland*, the claim lacks merit. *Strickland*, 466 U.S. at 697. Furthermore, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 670.

The Court notes that when a stipulation is a concession of facts which the state could have easily established at trial and no advantage would have inured to a petitioner

20

had counsel refused to enter the stipulation, a petitioner does not show the necessary prejudice to support an ineffective assistance of counsel claim regarding the stipulation. *See Berry v. King*, 765 F.2d 451, 454-55 (5th Cir. 1985). Here, the trial attorney's stipulations to the contents of police reports and the outcome of photographic line-ups falls into the category of facts that the state could easily have established at trial. Indeed, Petitioner mis-characterizes the evidence in the case when he states that the prosecution "lacked any proof that the alleged [incriminating] statements were made." It is true that there was no audio-tape recording of Petitioner's statements regarding the stolen cell-phones to the police. State Rec., Vol. 3, Transcript of Suppression Hearing, p. 30. Yet, it is not true that the prosecution "lacked proof" that Petitioner made the statements. Indeed, the prosecution had police reports that captured Petitioner's oral statements regarding his use of the cell-phones that had previously been taken from the victims. State Rec., Vol. 2, Notice of Intent to Use and Introduce Statement of the Defendant in Evidence, p. 175. Therefore, had the attorney refused to stipulate to the police reports, the prosecution could have easily established the facts contained within the police reports at trial. Accordingly, Petitioner's claim for ineffective assistance of counsel for failing to properly prepare for trial is without merit. Consequently, Petitioner's claims are dismissed.

IV. CONCLUSION

Having considered the complaint, the record, and the applicable law, it is determined that Petitioner has not established that his state conviction and sentence present grounds for the relief requested. Accordingly, Petitioner's claims are without merit and it is

**ORDERED** that the petition of Leonard McGee be **DENIED WITH PREJUDICE**.

Judgment will be entered accordingly.


New Orleans, Louisiana this 26th day of December, 2007.


HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE